Clyde Devore, Jr., Administrator of the Estate of Clyde Devore, Sr., Deceased, Plaintiff-Appellee, v. Toledo, Peoria and Western Railroad, a Corporation, Defendant-Appellant.

Gen. No. 10,318.

Third District.

May 16, 1961.

Rehearing denied June 13, 1961.

Cassidy & Cassidy, of Peoria, for appellant.

Livingston, Barger & Brandt, of Bloomington, for appellee.

ROETH, JUSTICE.

This is an action brought by the administrator of the estate of Clyde Devore, who was killed when his automobile collided with the train of the Toledo, Peoria & Western Railroad. Suit was brought against said railroad and the engineer and fireman of the train involved in the collision. A jury trial resulted in a verdict in favor of the plaintiff against the railroad and against the plaintiff in favor of the defendant engineer and fireman. The defendant railroad filed post trial motions in arrest of judgment and in the alternative to set aside the jury's verdict and enter judgment in favor of the railroad notwithstanding such verdict, and in the alternative for a new trial on the ground that the verdict was against the manifest weight of the evidence. The trial court denied all motions and entered judgment on the verdict against the railroad from which an appeal was taken to this court. The propriety of the judgment in favor of the engineer and fireman is not before this court since no appeal or cross appeal is taken by the plaintiff.

The complaint in the case at bar consisted of three counts, the first against the railroad, the second against the fireman White, and the third against the engineer Totten. The fireman and engineer were operating the train in question and the counts as to each defendant are identical. The negligence charged against the two individual defendants is that they (1) failed to give proper or any signal or warning of the approach of said cars toward Division Street, (2) moved said cars at an excessive and unreasonable rate of speed, (3) failed to give proper or adequate signal and warning of the approach of said cars to Division Street as required by the proximity of the buildings and obstructions to view at said intersection and (4) failed to keep a proper lookout for automobiles travel-

411

ing on Division Street. The sum and substance of these allegations is that in the operation of the train, these defendants failed to ring the bell, failed to blow the whistle and operated the train at an excessive rate of speed. These same allegations of negligence, in identical language, are contained in the count against the railroad. There are additional charges of negligence contained in the count against the railroad which we will hereafter consider.

■ So far as the charges of negligence against the railroad that it failed to ring a bell, failed to blow a whistle and operated the train at an excessive rate of speed are concerned, the doctrine of respondeat superior is invoked as to the manual operation of its train by its employees. The rule is axiomatic that if the employees are free from negligence in this regard, the railroad is likewise free from negligence in this regard. Rogina v. Midwest Flying Service, 325 Ill. App. 588, 60 N.E. 2d 633. It follows therefore, that a verdict finding the fireman and engineer not guilty of failing to ring a bell, failing to blow a whistle, operating the train at an excessive speed, exonerates the railroad from liability for such alleged negligence.

Plaintiff seeks to sustain the verdict and judgment against the railroad on the theory that there are other charges of negligence against the railroad separate and distinct from the charges of negligence attributed to its employees. Plaintiff relies upon Bunyan v. American Glycerin Co., 230 Ill. App. 351, which holds that an employer sued with an employee is not relieved from liability by a verdict and judgment in favor of the employee unless the sole negligence charged against the employer is the negligent act or omission of such employee. As heretofore noted, there are additional charges of negligence against the railroad. These are (1) that said railroad failed to adequately mark and protect said crossing by warning

devices and signals, (2) failed to operate its cars and train by qualified and experienced employees and (3) failed to properly maintain said crossing. To determine the question thus raised, we are required to examine the evidence.

On March 1, 1958, at about noon, the deceased was driving his automobile north on Division Street in Chenoa, Illinois, a village of some 1500 persons. Division Street is a black top street approximately 18 feet wide without curb or gutter. It connects with State Route 66 on the north and is the only street in Chenoa running clear through Chenoa from north to south. It extends past the high school and crosses U. S. Route 24 and carries a general flow of vehicular traffic. There is no perceptible grade on Division Street for a distance of at least 300 feet south or north of the crossing. The defendant's railroad tracks intersect Division Street at right angles and the train involved was heading in a westerly direction. The southeast quadrant of the intersection is occupied by a mill several stories in height and extending some distance to the east of the intersection. To the east of the mill there is a grain storage bin, a large concrete block building, a large tree and a dwelling house, along the right of way of the railroad. The next street east of Division Street is Second Street and the foregoing buildings are extended over something over ½ of the distance between Division and Second Streets. To the east of Second Street is Third Street and the full block between Second and Third Streets has a grove of catalpa trees about 30 feet in height extending along but inside the right of way of the railroad. Across the tracks from the mill and in the northeast quadrant of the intersection of Division Street and the railroad is a large elevator building. The mill buildings do not abut upon the black top portion of Division street. In other words, the west side of these

413

buildings is approximately 20 to 25 feet east of the east edge of the black top. Approximately ⅔ of the mill buildings extends into the right of way of the railroad and the grain storage bin above is also on the right of way. The milling company has lease rights to these portions of the right of way and pays rent therefor. The mill and storage bin are serviced by a service track situated south of the main track of the railroad. The train in question was being operated on the main track and not the service track at the time of the occurrence in question. No cars or trains were on the service track at the time of the occurrence. The crossing is marked by a cross buck sign bearing the words "railroad crossing".

Plaintiff contends that the special conditions existing at the crossing in question required precautionary measures other than the cross buck sign and that the failure of the railroad to provide such constitutes negligence. No statute or regulation of the Illinois Commerce Commission required a watchman, gates, signal bells or other special warning and protective devices at this crossing. However, the courts of Illinois have long been committed to the doctrine that independent of statute or regulation, there is a common law duty upon railroads to protect crossings with safety devices where special conditions warrant this being done. In other words, there may be special conditions creating special dangers that require other precautionary measures in addition to the usual cross-buck sign. Petricek v. Elgin J. & E. Ry. Co., 21 Ill. App. 2d 60, 157 N.E. 2d 421; Applegate v. Chicago & N. W. Ry Co., 334 Ill. App. 141, 78 N.E. 2d 793; Maltby v. Chicago Great Western Railway Co., 347 Ill. App. 441, 106 N.E. 2d 879. Whether a particular crossing falls within the above category is a jury question. Maltby v. Chicago Great Western Railway Co., supra. The jury could well find in the case before us that the

railroad was negligent in failing to adequately protect the crossing in question with adequate safety devices.

██ The controlling question therefore in this case involves the question of whether the deceased was guilty of contributory negligence as a matter of law. A decision of this case therefore requires us to determine whether there is any evidence when considered with all reasonable inferences to be drawn therefrom in its aspects most favorable to the plaintiff there is a total failure to prove the element of due care. If not then the post trial motion of defendant railroad for judgment notwithstanding the verdict should have been sustained.

The record shows that the deceased was familiar with the crossing and had travelled over it on Division Street on many prior occasions in going back and forth to work. His hearing and eyesight were unimpaired. On the date in question the deceased drove his car into the moving train as it was proceeding west across the crossing, striking the lead engine some 15 to 25 feet back of the front end. The point of impact occurred at approximately the center of Division Street as it crossed the main track.

A State Trooper, Stewart Grant, took certain pictures and made certain measurements shortly after the occurrence. He arrived at the scene 10 to 15 minutes after the occurrence. These pictures and his measurements are in the record. From his testimony it appears that at a point in the center of Division Street 61 feet south of the south rail of the main track, the main track was visible for a distance of 145 feet from the center line of Division Street to the east, despite the presence of the mill buildings. At a point in the center of Division Street 20.3 feet south of the south rail of the main track there was a clear unlimited view of the main track to the east, despite the presence of the mill buildings. He examined the

surface of Division Street and found no skid marks. There were two persons in a truck following the deceased at a distance of 75 to 100 feet behind him. They witnessed the occurrence and testified for the plaintiff. Both testified that they did not see the tail lights of the Devore car flash on before the collision as when the brakes are applied. Both testified that there was no appearance of any lessening of the speed of the Devore car prior to the collision. One of these witnesses said the Devore car appeared to drive straight on into the train and the other said it might have swerved a little before the impact. We are required to view the foregoing undisputed testimony in conjunction with the finding of the jury, which is binding upon us, that the bell was rung, the whistle was blown, and the speed of the train was not excessive.

The case of Tucker v. New York, Chicago & St. Louis Railroad Co., 12 Ill. 2d 532, 147 N.E. 2d 376, has some factual aspects which are comparable to the facts in the case at bar. There the plaintiff had a clear view of the track, when at a point 10 feet and 17 feet from the south rail. Here the point of clear view is 20.3 feet from the south rail. There as here, the driver was thoroughly familiar with the crossing. There is the additional factor in the case at bar of the ringing of the bell and sounding of the whistle. In the Tucker case, supra, the court said:

> "It is well settled that railroad crossings are dangerous places, and that in crossing them a person must approach the track with a degree of care proportionate to the known danger. The law requires that the traveler make diligent use of his senses of sight and hearing and exercise care commensurate with the danger to be anticipated. Moudy v. New York, Chicago & St. Louis Railroad Co., 385 Ill. 446, 53 N.E. 2d 406; Provenzano

v. Illinois Central Railroad Co., 357 Ill. 192, 191 N.E. 287; Greenwald v. Baltimore & Ohio Railroad Co., 332 Ill. 627, 164 N.E. 142. Nor does the law tolerate the absurdity of permitting a plaintiff to say he looked and did not see the approaching train, when had he looked he would have seen it. Dee v. City of Peru, 343 Ill. 36, 174 N.E. 901; Greenwald v. Baltimore & Ohio Railroad Co., 332 Ill. 627, 164 N.E. 142; Holt v. Illinois Central Railroad Co., 318 Ill. App. 436, 48 N.E. 2d 446."

In that case, the holding of this court that the plaintiff was guilty of contributory negligence as a matter of law was affirmed.

We therefore conclude that the deceased was guilty of contributory negligence as a matter of law and that defendant's motion for judgment notwithstanding the verdict should have been sustained. Accordingly the judgment of the Circuit Court of McLean County is reversed.

Reversed.

CARROLL, P. J. and REYNOLDS, J., concur.