Jack Haizen, Plaintiff-Appellant, v. Yellow Cab Company, a Corporation, John E. Neighbors, and Thomas J. Downs, Administrator of the Estate of Arthur H. Saunders, Deceased, Defendants-Appellees.

Gen. No. 48,619.

First District, First Division.

May 13, 1963.

Rehearing denied June 5, 1963.

Frank J. Scarpelli, Philip E. Howard and William H. Arpaia, of Chicago, for appellant.

William C. Wines, Michael A. Gerrard and Allen S. Gerrard of Chicago (Jesmer & Harris, of counsel), for Yellow Cab Company, appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

Plaintiff brought this action in the Circuit Court of Cook County to recover for injuries sustained when the cab in which he was a passenger collided with another car. Joined as defendants were the owner of the cab, the Yellow Cab Company, the driver of the cab, John E. Neighbors, and the owner and driver of the other car, Arthur H. Saunders. Upon the death of Mr. Saunders, Thomas J. Downs, the administrator of the Saunders' estate, was substituted as codefendant.

The accident occurred at the intersection of Archer Avenue and Pulaski Road. The cab was headed in a southwesterly direction on Archer, about to make a left turn onto Pulaski, when it collided with the Saunders' car, which had been headed in a northeasterly direction on Archer. The collision rendered plaintiff unconscious and he sustained injuries to his neck, shoulder, arm and hand. Prior to this incident plaintiff had been employed as a sales manager at a yearly salary of $25,000. Plaintiff was unable to return to work for several weeks after the accident. When he was able to return to work his injuries prevented him from continuing his prior employment, necessitating new employment at a salary of $18,000. Plaintiff's proven medical expenses were over $475.

At trial each driver contended the other was at fault. The jury's verdict found Yellow Cab Company liable and assessed damages at $500. A not guilty verdict was returned as to Downs, but defendant Neighbors was not mentioned in the verdict even though verdict forms had been provided.

After the verdict was returned, plaintiff made several post-trial motions. He requested a new trial as to Downs and presented alternative motions as to Yellow Cab, either for a new trial as to damages alone or for a new trial as to all issues. All motions were denied and this appeal was taken.*

█ Plaintiff filed his notice of appeal on July 12, 1961, and immediately encountered difficulties. These difficulties arose from the fact that the only stenographer present during the trial was employed by defendant and although plaintiff was willing to bear the expense, he was denied a copy of the transcript. Plaintiff's counsel was then kept busy for the next few months either appearing before or presenting motions to this court and the trial judge in an effort to secure a transcript so as to be able to prosecute the appeal. The trial judge, a visiting jurist, had returned to DeKalb by this time. Both the trial judge and this court denied plaintiff's requests either for an order directing that the stenographer furnish him a copy of the transcript or for an order allowing him to take the stenographer's deposition. Plaintiff then directed his efforts toward compiling a bystander's bill of exceptions containing a narrative concerned primarily with the issue of damages. This bystander's report is the only record before us on this appeal.

---

* No other motions were made before the trial judge. Yellow Cab made no objection to the jury's verdict finding it guilty without also returning a guilty verdict against the driver. An appeal was perfected against Yellow Cab only and further references to defendant in this opinion will mean the cab company unless otherwise specified.

After we denied plaintiff's motions for an order directing the stenographer to provide a copy of the transcript, and after briefs were filed, the Supreme Court handed down its opinion in Tansor v. Checker Taxi Co., 27 Ill2d 250, 188 NE2d 659. There, the Supreme Court held that in situations such as this, an order should be granted directing that a copy of the transcript be given appellant. We were, therefore, in error in not allowing plaintiff's motions.

■ Defendant first challenges the timeliness and adequacy of the report of proceedings filed by plaintiff. As indicated previously, plaintiff encountered many difficulties in perfecting his appeal and was forced to request numerous extensions of time. After examining the record, we conclude that the filing of the report of proceedings was timely and while we agree with defendant that the report is incomplete, we feel it is sufficient to enable us to decide the case on the merits.

■ Plaintiff's primary objection on this appeal is the adequacy of the award. Defendant contends that should the merits of the case be reached, the judgment should be affirmed since the award of $500 is, defendant contends, $500 more than plaintiff should have received. This argument is based on the fact that the jury failed to return a verdict as to the driver of the cab and this is, in law, equivalent to a finding of not guilty. Wabash R. Co. v. Keeler, 127 Ill App 265. Therefore, defendant insists, the judgment entered against it was erroneous since its liability was predicated solely on the negligence of its driver, who was found not guilty. Hayes v. Chicago Tel. Co., 218 Ill 414, 75 NE 1003; Devore v. Toledo, P. & W. Railroad, 30 Ill App2d 409, 174 NE2d 883. Defendant recognizes, however, that it has waived this argument by neither making a timely motion after the verdict was returned nor prosecuting an appeal, yet

it insists we should do no more than affirm the judgment entered below. Defendant is saying, in effect, that since it waived its objection, plaintiff's objections should also be considered waived. We cannot accept this.

 We must agree with plaintiff's contention that the award of $500 was palpably inadequate. This award barely exceeds the out of pocket expenses incurred for medical treatment. There is, essentially, no award for pain and suffering or for loss of wages. If plaintiff proved liability, he was entitled to recover for these items also. The collision caused plaintiff to be thrown against the bulkhead of the cab, twisting his neck, causing bleeding from his scalp and mouth and injuring his arm. He was unable to return to work for a period of about two months and then only on a part time basis. Further, he was required to seek new employment at a lower salary.

The nature and extent of plaintiff's injuries were testified to by Dr. S. Siffert, an orthopedic specialist, and Dr. Donald S. Miller, a certified orthopedic surgeon. Dr. Siffert x-rayed plaintiff's injuries and ordered plaintiff to wear a cervical collar and use a traction harness while confined to bed. Dr. Miller testified that the injuries were permanent and he linked the injuries to the accident.

██ ██ The jury was presented a case in which it could find liability against one or more of three defendants. It assessed liability against the cab company, which, as a public service carrier, owed plaintiff the highest degree of care. Once the jury assessed liability it became its duty to compute damages according to the evidence presented and the court's instructions. This they manifestly failed to do. It is true that courts, especially reviewing courts, are reluctant to overturn the jury's findings as to damages, but "an award cannot be upheld when serious

injuries are sustained and a small or nominal amount is awarded, especially when the injuries are permanent; . . ." 15 ILP, Damages, sec 162. Given the nature and extent of plaintiff's injuries, the amount of out of pocket expenses, and the loss of wages, it would appear that the jury either ignored the evidence, failed to follow the court's instructions, or compromised the question of liability and damages. If liability were clearly found against defendant, then plaintiff was entitled to an award adequately compensating him for his proven losses. If defendant were not liable, then no award should have been assessed against it. It is also true that when the record clearly shows the jury properly decided the question of liability, the court will reverse as to damages alone. Stroyeck v. A. E. Staley Mfg. Co., 26 Ill App2d 76, 167 NE2d 689. However, on the basis of the incomplete record before us, we cannot say that liability is clear. Therefore, there must be a new trial as to all issues.

█ Since a new trial is ordered the question arises as to whether defendant will be able to raise, as a bar to an action against it, the fact that there was no verdict as to the driver, Neighbors, and thereby claim that this is equivalent to a finding of not guilty. Insofar as plaintiff's complaint charges the company with independent acts of negligence, the doctrine of estoppel by verdict cannot be used. However, we feel that defendant is precluded entirely from raising the issue of estoppel. As we stated previously, defendant has waived any objection it might have to the finding of guilty as to it even though the driver was not found guilty. To allow it to raise the issue when the matter is retried would be a manifest injustice. As the court stated in Voorhees v. Chicago & A. R. Co., 208 Ill App 86, 95, "[a]n estoppel does not depend upon technicalities but the broad principle of justice, and it can apply only when the party has had his

day in court and an opportunity to establish his claim." To permit an estoppel to operate against plaintiff in the instant action would, in actuality, deprive him of his day in court.

To allow the result in the prior trial to operate as a bar would leave us with no alternative but to affirm the judgment entered below. We would not be able to reach the merits of the cause even though the case is properly before this court on appeal. There would be, in effect, no appeal. Further, we would be affirming a judgment both parties to this appeal state to be erroneous, albeit for different reasons. Neither party would receive substantial justice under such a circumstance.

The judgment entered against the Yellow Cab Company is reversed and the cause is remanded for a new trial.

Judgment reversed and cause remanded with directions.

MURPHY, J, concurs.

ENGLISH, J, dissenting:

I must dissent for a number of reasons.

This court's opinion reverses the trial court's judgment (and the jury's verdict) as to damages, because the majority have become convinced—presumably by the manifest weight of the evidence—that the damages awarded were inadequate. For this court thus to have considered and weighed the evidence, a proper record of the testimony must first have been presented. This was not done.

Rule 1 of this court (the same, in substance, as Rule 36 of the Supreme Court) provides for preserving evidence questions by the filing of a report of proceedings. Paragraphs (c) and (d) of the rule make it perfectly clear, I should think, that a "certificate of correctness"

must be attached to such a report before it will be considered as properly filed and "duly certified." * The certificate would ordinarily be made by the trial judge, but, in any event, there must be a certificate of correctness by a judge of the trial court before this court would have justification, or even authority, to review matters based on the evidence. In the case at bar there is no such document in the record before us—no "report of proceedings" in the ordinary sense, no "agreed statement of facts"—but only a narrative form docu-

---

* The rule reads in pertinent part:

(b) *Copies in record on appeal; Use of original report of proceedings or master's report.* All parts of the record so designated [in the praecipe] shall be incorporated in the record on appeal by copies certified by the clerk. However, the original of the report of proceedings at the trial, *as certified by the trial judge,* whether in the form of a complete stenographer's report or a condensed statement, or the original of the master's report shall, if requested in a praecipe, be incorporated in the record on appeal in lieu of certified copies, unless otherwise ordered by the trial court.

(c) *Certification and filing of report of proceedings.* The report of the proceedings at the trial, consisting of the rulings of the trial judge, the testimony, all other matters upon which rulings were made, and any other proceedings before the trial judge which the appellant desires to incorporate in the record on appeal, shall be procured by the appellant and submitted to the trial judge or his successor for his *certificate of correctness,* or if that is impossible because of the absence from the district, sickness or other disability of the judge, then to any other judge of the court, and filed, *duly certified,* in the trial court within 50 days after the notice of appeal shall have been filed.

· · · · ·

(d) *Agreed statement of facts.* In lieu of a report of proceedings, the parties may by written stipulation agree upon a statement of the facts material to the controversy and present the statement to *any judge qualified to certify to the correctness of a report of the proceedings* in said case, for his *certificate of correctness,* and file the same, *duly certified,* in the trial court within 50 days after the notice of appeal shall have been filed, subject to the same provisions as to extension hereinbefore set forth regarding the filing, of a report of the proceedings. (Emphasis supplied.)

ment (which the majority refer to as a "bystander's bill of exceptions"), which is wholly lacking in any certification of correctness by any judge of the trial court. In both form and substance this document is so incomplete * and inadequate on its face as not to warrant a certificate of correctness, and I believe the majority's comments in that regard concede as much. But, in any event, there is no such certification, and the document, therefore, cannot be considered at all by this court unless we intentionally ignore the rules of court. And this, of course, we cannot properly do, as the Supreme Court has repeatedly held that rules of court have the force of law. (Dept. of Finance v. Sheldon, 381 Ill 256, 257, 44 NE2d 863; People v. Byrnes, 4 Ill2d 109, 113, 122 NE2d 247; Thillens, Inc. v. Department of Financial Institutions, 24 Ill2d 110, 115, 180 NE2d 494.)

The trial judge had signed a certificate, the purport of which was merely that the report of proceedings had been presented to him. Later, finding that he had signed it "under a misapprehension," the trial judge entered an order *by agreement of the parties* directing that his signature to the document be expunged. Still later, he signed another certificate to the "bystander's bill" in the same general terms as the first certificate, certifying only that the report had been presented to the court. Needless to say, this is not the "certification of correctness" required by the rule.

In Tansor v. Checker Taxi Co., 27 Ill2d 250, 188 NE2d 659, the Supreme Court demonstrated its deep concern over the necessity for certification of the correctness of the report of proceedings (pursuant to its Rule 36) by its very consideration of the case, as well

---

* For example, it does not purport to include any testimony elicited on cross-examination. Nor does it include any rulings by the trial judge.

as by the decision reached. The court noted at page 253:

> . . . Here the plaintiff seeks review of a judgment entered notwithstanding the verdict. The sufficiency of the evidence introduced is determinative of this issue, and the evidence can be placed before a reviewing court only through a report of proceedings. Unless a report can be supplied, *certified by the trial judge in accordance with our Rule,* the plaintiff will be denied adequate appellate review. (Emphasis supplied.)

And one of the directions in the court's writ of mandamus required the trial judge "to certify the report of proceedings" to be prepared by the court reporter.*

In the Tansor case, as in the case at bar, a "condensed statement" or "bystander's bill" had been presented to the trial judge but had not been approved by him because he considered it inaccurate and incomplete. If his certification of correctness had not been necessary to a review of the evidence, the Supreme Court would not have heard or decided the case as it did.

I conclude, first, therefore, that the record in this court does not contain a proper report of the evidence on the basis of which we could reverse on the question of damages. The majority opinion places this court in the position of having reversed the trial court on the weight of evidence which may or may not have been the same as that considered by the trial judge. This, to me, is an alarming result, and one which gives to this

---

* At oral argument, mention was made of the Supreme Court's having handed down its opinion in the Tansor case only a few days before. Counsel for plaintiff expressly disavowed any interest in pursuing further the matter of the report of proceedings under the authority of the Tansor decision.

decision an importance beyond that attributable to the issues raised in the case itself.

On the issue of liability, I believe that the majority opinion compounds the error. It mentions that the narrative report is "concerned primarily with the issue of damages," and that "the report is incomplete." Then, because this uncertified report is so limited in scope and incomplete in other respects, the majority conclude that they "cannot say that liability is clear," and hence a new trial is ordered as to both liability and damages. I am unable to understand this reasoning, let alone agree with it. I should think, rather, that reversal of a liability verdict on the basis of the evidence would require us to find that the manifest weight of all the evidence clearly established that there was no liability. As we stated in Jackson v. Gordon, 37 Ill App2d 41, 44, 184 NE2d 805: "(S)ince a result contrary to the verdict is not clearly evident, it cannot properly be set aside by this court. (Romines v. Illinois Motor Freight, Inc., 21 Ill App2d 380, 385, 158 NE2d 97; Paul Harris Furniture Co. v. Morse, 10 Ill2d 28, 42, 139 NE2d 275.)"

Furthermore, neither side has indicated any desire for a new trial on the issue of liability. Defendant filed no cross-appeal. Plaintiff's notice of appeal specifically prays that this court grant him a new trial "on the issue of damages only." His brief, likewise, makes the same specifically limited request.* For the parties thus to limit the issues on appeal, and to waive other relief, is in keeping with both the letter and the spirit of Supreme Court Rule 33. It is my belief, further, that the notice of appeal, being jurisdictional, limits the scope of the review in this court to the part of the judgment from which appeal has been taken. (McCottrell v. Benson, 32 Ill App2d 367, 370, 178 NE2d 144; Ko-

---

* One result of this limitation of the issues on appeal was that we were not briefed by either side on the issue of liability.

341

lacz v. Chicago Surface Lines, 330 Ill App 429, 71 NE2d 188; Janecko v. Appleton Elec. Co., 38 Ill App2d 116, 119, 186 NE2d 662; Smith-Hurd Illinois Annotated Statutes, Historical and Practice Notes, Ch 110, § 101.33.)

Apart from the insufficiencies of the record, which I have referred to, the abstract of that record has been prepared in such flagrant disregard of Rule 6 of this court (Supreme Court Rule 38) that it does not present sufficiently the matters argued in the briefs. As an example, it is impossible to ascertain from the abstract in regard to the post-trial motion and the notice of appeal whether or not the appeal was perfected in accordance with the jurisdictional requirements of the Practice Act. (Ill Rev Stats, c 110, §§ 74(3) and 76(2).) Under such circumstances the appeal was dismissed in Clark v. Titone, 10 Ill App2d 135, 134 NE2d 348. Taking similar action in Campbell v. Fazio, 23 Ill App2d 106, 110, 161 NE2d 579, that court said: "However liberal our courts may tend to be in construction of Rule 38 of the Supreme Court and Rule 6 of this court, there must of necessity be substantial compliance with the rules, or the abstracts will become so emasculated that the reviewing court will be compelled to search the record for the facts." See also Hayes v. Industrial Commission, 383 Ill 272, 48 NE2d 940.

The majority recognize the rule, as applied to this case, that the jury's failure to return a verdict as to the cab driver was equivalent to a finding in his favor. They also acknowledge the principle that an employer cannot properly be found liable for the acts of its agent if the agent himself is found to be free from negligence in this regard, citing Devore v. Toledo, P. & W. Railroad, 30 Ill App2d 409, 412, 174 NE2d 883, in which the court stated that this rule is axiomatic. With these statements I agree. The majority opinion then says, however, that the doctrine of estoppel aris-

342

ing out of this situation could not be employed by defendant on a new trial "(i)nsofar as plaintiff's complaint charges the company with independent acts of negligence." I also agree with this principle, but not with its application here, because I can find in the complaint no charge whatsoever against the cab company which is not predicated upon negligence of the driver.

Finally, the majority state that, on a new trial, defendant should not be allowed to raise the issue of estoppel by verdict even as to the acts of negligence charged against the cab driver. With the imposition of such a restriction defendant would be required to take part in the new trial under a severe, undeserved and unwarranted handicap. Defendant would, presumably, be permitted to introduce evidence tending to show that its driver was not negligent, and it would be permitted to argue that such was the case, but it would not be permitted to show that this very issue had previously been finally adjudicated by the verdict and judgment in its driver's favor. At the same time, it would, presumably, be forbidden to introduce evidence or otherwise to present the proposition that negligence on the part of the driver of the other vehicle was the exclusive cause of the accident. And this, because the verdict and judgment in favor of that driver would operate as an estoppel. Such a new and strange proceeding would, in my opinion, be most unfair, and unbecoming the judicial process. Yet, this result is justified, say the majority, on "the broad principle of justice"; to avoid "manifest injustice"; and because defendant waived its right to the estoppel feature of its defense by not appealing.

I fail to see the waiver. Defendant was willing to pay the amount of the judgment against it rather than appeal—an election which should always be open to any litigant. Now, however, the circumstances prevail-

343

ing at the time, and on the basis of which this choice was made, are about to be changed. Only when the judgment is set aside by this court would defendant have occasion or need to assert the defense of estoppel by verdict, and yet at that very moment this court would impose a restriction preventing it from exercising its right to that defense. It is true that the doctrine of estoppel by verdict operates as a defense, but its characteristic is that it works against a claimant by the emplacement of a bar to his claim. Plaintiff's original claim was merged into the judgment which defendant was willing to pay. After that judgment is set aside, then for the first time could it be said that plaintiff would be making a claim in opposition to which defendant might interpose the defense of res judicata or estoppel by the verdict in favor of its driver.

Neither the decision nor the quotation from the opinion in Voorhees v. Chicago & A. R. Co., 208 Ill App 86, 95, cited by the majority, supports their conclusion. The principal-agent relationship was not involved in that case, and the opinion makes no declaration from which it might logically be deduced that to permit estoppel in the case at bar would deprive plaintiff of his day in court. And as to "the broad principle of justice," it is on precisely that foundation that the law has erected the doctrine of estoppel by verdict as it relates to respondeat superior.

In the leading case of Charles E. Harding Co. v. Harding, 352 Ill 417, 186 NE 152, the Supreme Court, in considering the principle of res judicata, said at page 427:

> . . . This principle is sometimes called estoppel by verdict, and the estoppel is equally available to either party, the plaintiff in support of his action or the defendant of his defense, when the circumstances warrant it. Whether the adjudication relied on as an estoppel goes to a single question or

all the questions involved in the case, *the funda-mental principle upon which it is allowed is that justice and public policy alike demand that a mat-ter, whether consisting of one or many questions, which has been solemnly adjudicated in a court of competent jurisdiction shall be deemed finally and conclusively settled* in any subsequent litigation be-tween the same parties where the same question or questions arise, except where the litigation is a direct proceeding for the purpose of reversing or setting aside such adjudication. (Emphasis sup-plied.)

Greenberg v. Chicago Cab Co., 274 Ill App 666, was a case involving facts very similar to those in the case at bar. This court said in that opinion:

(S)ince the jury by its verdict found the driver of the cab not guilty and judgment having been entered on the verdict and no appeal having been taken, the judgment is conclusive in favor of the defendant cab company. It is obvious that if the driver of the cab was not guilty of negligence in driving the cab at the time in question, the defend-ant cab company could not be held liable on the doctrine of respondeat superior. Chicago Tel. Co. v. Hayes, 121 Ill App 313 [affirmed 218 Ill 414].

There are numerous other decisions indicating that defendant, on a new trial in the instant case, would have a perfect right to raise the defense of res judicata, or estoppel by verdict. Included among these are City of Elmhurst v. Kegerreis, 392 Ill 195, 201, 64 NE2d 450; Rogina v. Midwest Flying Service, Inc., 325 Ill App 588, 589, 60 NE2d 633; Antrim v. Legg, 203 Ill App 482. To direct a new trial under this circumstance would not seem to me to be reasonable.

In light of all of the foregoing, I would affirm the judgment of the trial court.